OPINION
Appellant Maxwell D. White, Jr. is appealing the decision of the Ashland County Court of Common Pleas that dismissed his petition for postconviction relief. The following facts give rise to this appeal.
On January 19, 1996, at 3:00 a.m., appellant shot Ohio Highway Patrol Trooper Jim Gross, killing him. On the day prior to the shooting, appellant, disgruntled by a visit with his parole officer, decided to go to a bar rather than report to work. Appellant stopped at his residence, which he shared with his mother, Jean White, at approximately 5:00 p.m., to pick up his pool cue. Appellant frequented several bars and returned home that evening, extremely intoxicated, at approximately midnight.
Upon returning home, appellant got into an argument with his mother. Appellant's sister arrived, at the residence, to help calm appellant, but this only increased appellant's anger. Following this confrontation with his mother and sister, appellant decided he would leave home and began packing his belongings, including his gun collection. Appellant eventually ordered his mother to pack for him fearing she or his sister would call the police. Prior to leaving the residence, appellant tied his mother and sister to a pole in the basement. While fumbling with a gun, the gun discharged, striking appellant's mother in the foot. Appellant then left the residence and began driving his vehicle at a high rate of speed on Interstate 71. Several motorists reported an automobile driving recklessly to the State Highway Patrol. Trooper James Gross received these reports and left the field post to investigate. Within a few minutes, Trooper Gross spotted appellant's vehicle and pursued it. Prior to stopping appellant, Trooper Gross called in appellant's license plate number and learned that appellant had a prior conviction for drunk driving.
At trial, several passing motorists testified they saw Trooper Gross standing beside the driver-side-door of appellant's vehicle. The door of appellant's vehicle was open and it appeared that appellant and Trooper Gross were wrestling. At that point, appellant fired two shots at Trooper Gross, striking him in the left arm and back. The shot to the back occurred after Trooper Gross fell to the ground attempting to run back to his cruiser. Although a passing motorist stopped to help Trooper Gross and radioed for emergency medical technicians, Trooper Gross could not be revived. Trooper Gross died as a result of a gun shot wound to the right ventricle of his heart.
Immediately following the shooting, appellant fled the scene in his vehicle. Witnesses to the shooting began following appellant. After a chase involving both truck drivers and law enforcement, at speeds reaching one hundred miles per hour, appellant crashed his vehicle when he skidded off the road at an exit ramp. Law enforcement officials took appellant into custody.
The Ashland County Grand Jury indicted appellant on January 25, 1996, charging appellant with the aggravated murder of James Gross. Count One of the Indictment contained the following three specifications: R.C. 2929.04(A)(3), committed for the purpose of escaping detection, apprehension, trial or punishment for another offense committed by the offender; R.C. 2929.041(A)(6), the victim was a peace officer whom the offender had reasonable cause to know or knew to be such, and was engaged in his duties; and R.C.2941.141, the offender had a firearm on or about his person or under his control while committing the offense of aggravated murder. Count Two of the indictment charged appellant with having weapons while under disability. Count Three of the indictment charged appellant with the crime of abduction of Jean White with the specification of having a firearm on or about his person or under his control while committing the offense of abduction.
The trial court arraigned appellant on the above charges on January 23, 1996. Appellant entered a plea of not guilty by reason of insanity. The trial court conducted a competency hearing on April 22, 1996. Dr. James F. Sunbury, Psychologist, prepared a psychological evaluation of appellant. In this report, Dr. Sunbury stated that appellant was competent to stand trial. The parties thereafter stipulated to appellant's competency and the trial court accepted the stipulation and ruled that appellant was competent to stand trial. The trial of this matter commenced on June 10, 1996. Following deliberations, on June 19, 1996, the jury returned a verdict finding appellant guilty, as charged in the indictment. The trial court proceeded to the mitigation phase of the trial on June 24, 1996. The jury began deliberations, regarding the mitigation phase, on June 28, 1996. On June 29, 1996, the jury returned its verdict recommending the sentence of death for the aggravated murder of Trooper Gross. The trial court accepted the recommendation, on July 10, 1996, and sentenced appellant to death. The trial court also sentenced appellant to eighteen months on the charge of having weapons while under disability and five to ten years on the count of abduction, to be served consecutively to the other charges.
Appellant filed a notice of appeal to this Court on August 14, 1996. We dismissed appellant's appeal for want of jurisdiction on September 24, 1996. Appellant filed a motion for reconsideration, which we denied, on October 28, 1996. Appellant subsequently appealed to the Ohio Supreme Court.[1] On May 5, 1997, appellant filed a petition to vacate or set aside sentence pursuant to R.C. 2953.21. Appellant requested an evidentiary hearing on his postconviction claims. On May 29, 1997, appellant amended his petition for postconviction relief. In addition to his petition for postconviction relief, appellant also filed a motion for discovery, motion for an order to the Ashland County Prosecutor's Office to preserve and allow inspection of potential exculpatory evidence and a motion to secure funds for expert assistance and leave to amend.
The trial court scheduled an oral hearing on the petition for postconviction relief and on the above motions for July 2, 1997. Prior to the scheduled hearing, the state filed a motion requesting until July 8, 1997, to respond to the petition for postconviction relief. Thereafter, appellant filed a motion for clarification on June 11, 1997, requesting clarification of the scope and nature of the hearing scheduled for July 2, 1997. In a letter dated June 13, 1997, the trial court advised the parties that the hearing scheduled for July 2, 1997, was to address issues in connection with a motion to correct the record filed in the direct appeal to the Ohio Supreme Court. The trial court also indicated, in the letter, that at the hearing on July 2, 1997, it would schedule a hearing date on the petition for postconviction relief.
The trial court subsequently scheduled a hearing, on July 30, 1997, on all motions pending in connection with the petition for postconviction relief. On July 8, 1997, the state filed a response requesting dismissal of appellant's postconviction petition. Appellant filed a response to the state's request for a dismissal on July 21, 1997. At the hearing on July 30, 1997, the trial court limited oral argument to the state's motion to dismiss appellant's petition for postconviction relief.
The trial court granted the state's motion to dismiss appellant's petition for postconviction relief on August 18, 1997. Appellant timely filed a notice of appeal to this Court on September 17, 1997, and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN FAILING TO REVIEW THE RECORD OF THE ENTIRE PROCEEDINGS AGAINST MR. WHITE AS MANDATED BY OHIO REV. CODE SECTION 2953.21(C) AND (E).
 II. THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION TO DISMISS UNDER RULE TWELVE OF THE OHIO RULES OF CIVIL PROCEDURE.
 III. THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CAUSES OF ACTION REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL WITHOUT FIRST GRANTING DISCOVERY AND AN EVIDENTIARY HEARING IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 1, 2, 5, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTIONS AND DISMISSING HIS POST-CONVICTION PETITION WITHOUT GRANTING DISCOVERY AND AN EVIDENTIARY HEARING.
 IV
We will address appellant's fourth assignment of error first. In his fourth assignment of error, appellant contends he was entitled to discovery and an evidentiary hearing in regards to his petition for postconviction relief. We disagree.
Pursuant to R.C. 2953.21(C), before granting a hearing, the trial court shall determine whether there are substantive grounds for relief. The petitioner bears the burden of specifically demonstrating prejudice, before a hearing is warranted. E.g.State v. Jackson (1980), 64 Ohio St.2d 107. In addition, the claims must rely upon evidence outside the record in order to avoid the doctrine of res judicata, as outlined in State v. Perry
(1967), 10 Ohio St.2d 175. For the reasons that follow, we find appellant did not satisfy the burden of providing sufficient evidentiary materials to establish that his claims were meritorious, thereby warranting a hearing.
Further, R.C. 2953.21(C) expressly provides that the initial determination of whether a postconviction petition states substantive grounds for relief is to be made based upon the petition and any supporting affidavits, together with the case files and records. Therefore, a petitioner for postconviction relief is not entitled to discovery during the initial stages of postconviction proceedings. State v. Gillard (June 22, 1998), Stark App. Nos. 1997CA00318, 1997CA00410, unreported, at 15, citing State v. Loza (Oct. 13, 1997), Butler App. No. CA96-10-214, unreported, at 6. Accord, State v. Benner (Aug. 27, 1997), Summit App. No. 18094, unreported; State v. Poindexter (Aug. 29, 1997), Hamilton App. No. C-960780, unreported; State v. Webb (Oct. 20, 1997), Clermont App. No. CA96-12-108, unreported.
Appellant's fourth assignment of error is overruled.
 II
We will next address appellant's second assignment of error. In his second assignment of error, appellant maintains the trial court erred when it granted the state's motion to dismiss his petition for postconviction relief, under Civ.R. 12(B)(6), because the doctrine of res judicata is inapplicable to a Civ.R. 12(B)(6) motion to dismiss. We disagree.
 Postconviction Proceedings and Doctrine of Res Judicata
A postconviction petition is a special statutory proceeding governed by R.C. 2953.21. This statute provides, in Section (A)(1), that "[a]ny person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition * * *." See, also, State v. Perry (1967), 10 Ohio St.2d 175, paragraph four of the syllabus.
A trial court may dismiss a petition for postconviction relief where a petitioner fails to allege facts which, if proved, would entitle the petitioner to relief. Perry at paragraph two of the syllabus. However, where a petition for postconviction relief alleges facts, which, if proved, would entitle the petitioner to relief, but the files and records of the case do not contain facts sufficient to entitle the petitioner to relief, the trial court may dismiss the petition upon making findings of fact and conclusions of law. R.C. 2953.21(C); Perry at paragraph three of the syllabus.
Further, the Ohio Supreme Court explained, in Perry, that constitutional issues cannot be considered in postconviction proceedings where they have already been or could have been fully litigated by the prisoner while represented before his or her judgment of conviction or on direct appeal from that judgment.Id. at paragraph seven of the syllabus. Therefore,
 [u]nder the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. (Emphasis sic.) Id. at paragraph nine of the syllabus.
Thus, a trial court may apply res judicata if the petition for postconviction relief does not include any materials out of the original record to support the claim for relief. Id.; Statev. Cole (1982), 2 Ohio St.3d 112, 114. In order to overcome theres judicata bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record. Cole at syllabus.
 Application of Doctrine of Res Judicata to Civ.R. 12(B)(6) Motion to Dismiss
Appellant next argues that the defense of res judicata cannot be raised in the context of a Civ.R. 12(B)(6) motion to dismiss. We disagree.
This Court has previously held that "[a]lthough the doctrine of res judicata may not be used as a grounds for a Civ.R. 12(B)(6) motion to dismiss, it is a proper basis for a court to find that a defendant has failed to state a claim upon which relief can be granted in an R.C. 2953.21(C) proceeding." Gillard at 14. See, also, State v. Joseph (July 17, 1997), Allen App. No. 1096-90, unreported, at 2.
As noted above, a petition for postconviction relief is governed by R.C. 2953.21. Under this statute, a defendant is required to support his or her claims for relief with evidentiary material at the time he or she files the petition. Therefore, unlike in an ordinary civil suit, where the trial court has before it only the complaint on a motion to dismiss, the court reviewing a petition for postconviction relief has before it evidentiary material and the record, from which it is required to make a determination as to the necessity of a hearing. As such, the defense of res judicata is, therefore, a proper basis for dismissal of a claim pursuant to R.C. 2953.21(C).
 Appellant's Causes of Action
Appellant sets forth eight separate causes of action in support of his petition for postconviction relief. Appellant's causes of action are as follows.
Appellant contends, in his first cause of action, that his conviction and sentence is void or voidable because the prosecution engaged in misconduct throughout his capital trial in violation of his constitutional rights under the Fifth, Sixth,Eighth and Fourteenth Amendments. Appellant attached affidavits to his petition for postconviction relief which he argues supports his claim that the prosecution knew or should have known that it mischaracterized evidence; introduced misleading and/or false testimony to the jury; suppressed evidence favorable and material to issues in the culpability and sentencing phases and created a materially false impression; and engaged in serious misconduct throughout the trial.
In his second cause of action, appellant maintains the proportionality review of capital cases under the current scheme does not comport with the demands of the due process and equal protection clauses of the Ohio and United States Constitutions. The third cause of action alleges the imposition and planned execution of the death penalty under Ohio law and practice constitutes cruel and unusual punishment.
Appellant lumps his fourth, fifth and eighth causes of action together and sets forth the following arguments. In his fourth cause of action, appellant maintains he was denied the right to a trial by a fair and impartial jury of his peers as the result of extensive pretrial publicity. In his fifth cause of action, appellant contends he was denied his right to due process and a fair trial because the jury misconstrued its sentencing obligation, was unfairly prejudiced by pretrial publicity, infected with emotionalism, tainted by inherent prejudices and plagued with an admittedly biased juror. In support of his eighth cause of action, appellant maintains he was denied his right to due process and a fair trial because the jury did not receive the correct, relevant and pertinent information about parole availability and received other erroneous jury instructions.
In his sixth cause of action, appellant contends the judgment and sentence against him are void or voidable because he did not receive effective assistance of counsel during the penalty phase of his capital trial and counsel failed to effectively protect his right to the assistance of experts in his defense.
In support of the above eight causes of action, appellant submitted six volumes of documents. The evidence can be grouped into several categories, including: newspaper articles; information regarding the death penalty; records from the Ashland County Corrections Division; medical records; affidavits of experts and family members; and legal documents from appellant's trial and other trials conducted in Ashland County.
Based upon our review of the above evidence, we find the trial court properly denied appellant's petition for postconviction relief. In support of his first cause of action, alleging prosecutorial misconduct, appellant submitted the following Exhibits: W, X, Y, Z, HH, JJ, TTT, UUU, KKK, ZZZ, CC, RRR, EEE, R, I, OOO, GGG, SSS, QQ, QQQ, MMM, NNN, Q, EE, LLL, WWW, XXX, A, S, CCC, M, EEEE, IIII, and FFFF. Before addressing this evidence, we note that Exhibits EEEE and FFFF do not exist in the record. Our review of the remaining exhibits establish that these materials are not materials outside the original record which would support appellant's claim for relief or do not meet a minimum level of cogency to support the claim of prosecutorial misconduct.
Further, the affidavits of appellant, Dorothy White, Charles T. Kandiko, Ph.D., Robert Whitney, Robert Smith, Ph.D., and Jean White fail to establish substantive grounds for relief which would entitle appellant to a hearing. Appellant's own self-serving affidavit will not compel a hearing. State v. Kapper (1983),5 Ohio St.3d 36, 37-38. We also find the remaining affidavits present merely cumulative, irrelevant or alternative evidence to that presented at trial. Therefore, the trial court properly denied appellant a hearing. State v. Powell (1993), 90 Ohio App.3d 260,270; State v. Van Hook (1988), 39 Ohio St.3d 256,263-264.
Failing to set forth any substantive grounds for relief, the trial court properly denied appellant a hearing on the issue of prosecutorial misconduct. We also agree with the trial court's conclusion that a claim of prosecutorial misconduct is barred by the doctrine of res judicata because this issue was raised by appellant in his direct appeal to the Ohio Supreme Court. Statev. White (1998), 82 Ohio St.3d 16, 21-23.
In his second cause of action, appellant contends the proportionality review of capital cases, under the current scheme, does not comport with the demands of the due process and equal protection clauses of the Ohio and United States Constitutions. In support of this cause of action, appellant submits Exhibits D through K. These documents concern cases from Ashland County wherein the indictment did not contain a death penalty specification based upon similar facts or the defendant did not receive the death penalty based upon similar facts.
We find the evidence submitted in support of this cause of action insufficient to entitle appellant to a hearing. The evidence fails to meet a minimum level of cogency to support this cause of action. Therefore, the trial court properly denied appellant a hearing concerning his proportionality argument. Further, this argument is also barred by the doctrine of resjudicata as appellant raised this issue on direct appeal to the Ohio Supreme Court. White at 27-29.
Appellant maintains, in his third cause of action, that the imposition and planned execution of the death penalty, under Ohio law and practice, constitutes cruel and unusual punishment. In support of this argument, appellant submits Exhibit B. Appellant argues this claim, for the first time, is now cognizable in postconviction proceedings since the United States Supreme Court's decision in Remeta v. Florida (March 30, 1998), 1998 WL 141409. In Remeta, four justices expressed their views that the question of death by electrocution should be reviewed under contemporary standards.
However, neither the Ohio Supreme Court, nor the United States Supreme Court has changed the long-standing precedent that death by electrocution is not cruel and unusual punishment. E.g.,In Re Kemmler (1890), 136 U.S. 436; State of Louisiana ex rel.Francis v. Resweber (1947), 329 U.S. 459, 467; Glass v. Louisiana
(1985), 471 U.S. 1080, 1081. Further, the evidence, submitted by appellant in Exhibit B, does not set forth substantive grounds which would require a hearing, especially based upon the decisions rendered by the Ohio and United States Supreme Court. Further, this is an issue appellant could have raised on direct appeal to the Ohio Supreme Court and therefore, is also barred by the doctrine of res judicata.
In his fourth, fifth and eighth causes of action, appellant argues he was denied his right to due process and a fair trial due to pretrial publicity. Appellant also maintains the jury misconstrued its sentencing obligation and was unfairly prejudiced by pretrial publicity, infected with emotionalism, tainted by inherent prejudices and plagued by an admittedly biased juror. Finally, appellant also contends the jury did not receive the correct, relevant and pertinent information about parole availability and received other erroneous jury instructions.
In support of these causes of action, appellant cites to the following Exhibits: A, C, D, E, F, G, H, I, J, K, L, M, EEE, HHH, III, KKK, LLL, MMM, NNN, OOO, QQQ, SSS, VVV, WWW, XXX, ZZZ, AAAA, BBBB, CCCC, HHHH. The evidence submitted in support of the issues concerning pretrial publicity, juror bias, change of venue and language used in the jury instructions does not set forth substantive grounds which would entitle appellant to a hearing. Further, these are issues appellant raised, on direct appeal, and therefore, are barred by the doctrine of res judicata. White at 20-21, 25-26.
Appellant contends, in his sixth cause of action, that the judgment and sentence against him is void or voidable because he did not receive effective assistance of counsel during the penalty phase of his capital trial and counsel failed to effectively protect his right to the assistance of experts in his defense.
Appellant contends he was denied effective assistance of counsel because defense counsel failed to present available, compelling, mitigating evidence during the penalty phase. Appellant also criticizes defense counsel's use of Dr. Sunbury as a psychological expert at trial. Appellant refers to the affidavit of Dr. Robert Smith in which he states defense counsel failed to meaningfully work with him to conduct an adequate mitigation investigation. Appellant further argues defense counsel failed to present any evidence regarding his long family history of disturbed behavior and mental illness in addition to his own neurological impairment. Appellant contends defense counsel also failed to deliver information, to their expert, about his intoxication the night of the crime in time for this evidence to be used during the trial phase.
To determine whether the trial court erred by concluding that petitioner was not entitled to substantive relief, it is necessary to examine the elements of ineffective assistance claims. The test is first whether the attorney's failure to introduce the evidence fell below the objective standard of reasonableness and second, whether the deficient performance was prejudicial to appellant. Strickland v. Washington (1984),466 U.S. 668, 687; State v. Bradley (1989), 42 Ohio St.3d 136. To establish prejudice, appellant may not necessarily rely upon a showing that, in the absence of the attorney's deficient performance, the outcome of the guilt or penalty phase would have been different. Lockhart v. Fretwell (1993), 506 U.S. 364, 372. Appellant must establish that he was denied some substantive or procedural right that made the "trial unreliable or the proceeding fundamentally unfair." Id.
The issues dealing with general mitigation evidence and appellant's family history of mental illness and his own neurological impairment are issues that, based upon the record, could have been presented, on direct appeal, to the Ohio Supreme Court. Therefore, these arguments are barred by res judicata. Appellant next contends, based upon affidavits submitted by defense counsel, that defense counsel considered Dr. Sunbury incompetent from their prior dealings with him. Appellant also submitted the affidavit of Dr. Robert Smith, defense psychologist, in which he states defense counsel failed to work with him to conduct an adequate mitigation phase and failed to get information to him regarding evidence of appellant's intoxication in time for Dr. Smith to use it during the trial phase of the proceedings.
The evidence submitted in support of the above arguments does not pass the minimum threshold of showing why defense counsel's use of defense experts could not have been brought as an ineffective assistance claim on direct appeal. Therefore, this claim is barred by the doctrine of res judicata. Further, "[a] postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial." State v. Combs (1994), 100 Ohio App.3d 90,103, citing State v. Jamison (Sept. 19, 1990), Hamilton App. No. C-910736, unreported. Under the Strickland analysis, we find defense counsel's performance did not fall below the objective standard of reasonableness or that the performance was prejudicial to the defense. Appellant was not denied a substantive or procedural right that made the trial unreliable or fundamentally unfair.
Finally, in his seventh cause of action, appellant contends the judgment and sentence against him are void or voidable because he did not receive effective assistance of counsel due to defense counsel's failure to investigate and present evidence of potential bias by jurors and witnesses. Appellant further maintains defense counsel was ineffective due to other numerous acts and omissions. In support of this cause of action, appellant cites to the following Exhibits: A, C, D, E, F, G, H, I, J, K, l, M, N, O, P, Q, R, S, T, U, V, Y, Z, AA, BB, CC, DD, EE, FF, GG, HH, II, KK, LL, MM, NN, OO, PP, RR, SS, TT, UU, VV, WW, XX, YY, ZZ, AAA, BBB, CCC, FFF, GGG, HHH, III, JJJ, KKK, LLL, MMM, NNN, OOO, PPP, QQQ, RRR, TTT, UUU, YYY, ZZZ, AAAA, BBBB, CCCC, DDDD, GGGG, HHHH, IIII, JJJJ. As with appellant's sixth cause of action, this claim could be brought on direct appeal and in fact, appellant did pursue this matter in his direct appeal to the Ohio Supreme Court. White at 23-25.
Based upon our above analysis, the trial court did not err when it granted the state's motion to dismiss appellant's petition for postconviction relief pursuant to Civ.R. 12(B)(6).
Appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant maintains the trial court erred in dismissing his causes of action regarding ineffective assistance of counsel without first granting discovery and an evidentiary hearing. We disagree.
In support of this assignment of error, appellant refers to his sixth and seventh causes of action which this Court already reviewed in his second assignment of error. Therefore, we will not address those claims of ineffective assistance of counsel already addressed in appellant's second assignment of error. Appellant claims defense counsel was ineffective for the following reasons. First, defense counsel should have filed a motion to suppress evidence seized from his vehicle because the Ohio State Highway Patrol conducted an unauthorized search of his vehicle. Second, defense counsel was ineffective for failing to request a change of venue due to pretrial publicity.
Third, defense counsel failed to insure that a complete and accurate record of all proceedings was made. Specifically, appellant refers to the fact that defense counsel should have taken action to preserve a video tape recording of the trial which would have reflected the errors. Fourth, defense counsel failed to properly execute documents that would accurately indicate whether there was or was not an agreement pertaining to the withdrawal of the motion for a plea of not guilty by reason of insanity. Fifth, defense counsel's voir dire examination of the potential jurors failed to meet the minimum standards of representation of a capital defendant. Sixth, defense counsel was ineffective for eliciting evidence regarding appellant's prior bad acts. Seventh, defense counsel failed to challenge the inaccurate testimony from Pickerington Police Patrolman Simcox.
Eighth, defense counsel failed to object to the state's introduction of inflammatory and gruesome photographs of the victim. Ninth, defense counsel told the jury that appellant was guilty of the abduction charge of Jean White. Tenth, defense counsel allowed Jean White and Dr. Robert Smith to be improperly examined by the prosecution. Eleventh, defense counsel failed to perform its essential duty of investigating the case completely and thoroughly. Twelfth, defense counsel failed to insure and safeguard appellant's right to be present at every stage of the trial.
Appellant sets forth the following claims of ineffective assistance of counsel during the penalty phase. First, that defense counsel failed to develop critical mitigating evidence through their psychological expert. Second, defense counsel failed to present available mitigating evidence of appellant's intoxication. Third, defense counsel failed to collect and present available mitigating evidence. Fourth, defense counsel improperly relied on an expert aligned with the state, whom defense counsel admittedly considered substandard. Fifth, defense counsel erred in requesting a presentence investigation. Sixth, defense counsel committed other errors at the penalty phase of his capital trial which compounded the aforementioned errors.
We will first address the twelve errors appellant raises concerning the trial phase. Appellant raised the issues of venue, an incomplete record, improperly executed documents, voir dire, appellant's prior bad acts and appellant's right to be present, in his direct appeal to the Ohio Supreme Court. Clearly, appellant was able to raise these issues on direct appeal based upon the evidence contained in the record. Therefore, the doctrine of resjudicata applies.
Appellant also contends defense counsel was ineffective, during the trial phase, because they failed to file a motion to suppress; permitted inaccurate testimony of Pickerington Police Patrolman Simcox; allowed the state to display gruesome photographs; told the jury appellant was guilty of abduction of Jean White; permitted the state to improperly examine Jean White and Dr. Smith; and failed to completely investigate the case. All of these issues could have been raised on direct appeal to the Ohio Supreme Court based upon the transcript of the proceedings in the trial court. Therefore, these claims are barred by the doctrine of res judicata.
Appellant further contends defense counsel was ineffective during the penalty phase of the trial based upon the six errors set forth above. We have reviewed the evidence submitted in support of these six claimed errors and find it insufficient in that it fails to set forth substantive grounds which would even entitle appellant to a hearing. As such, the trial court properly denied appellant relief.
We find defense counsel's performance did not fall below the objective standard of reasonableness or prejudiced the defense. Nor do we find appellant's trial was unreliable or fundamentally unfair. The trial court did not err when it dismissed appellant's claim for ineffective assistance of counsel.
Appellant's third assignment of error is overruled.
 I
Finally, we will address appellant's first assignment of error in which he contends the trial court erred in failing to review the entire record of the proceedings before dismissing his petition for postconviction relief. We disagree.
Appellant contends that appellate counsel discovered, in October of 1997, that the record of this matter was incomplete in that no copy of the transcript of trial proceedings was in the file at the Ashland County Clerk of Courts. Appellant argues that R.C. 2953.21(C) and (E) mandate review of the entire proceedings and due to the fact no transcript was in the file, the trial court judge could not have reviewed the entire proceedings prior to dismissing appellant's petition for postconviction relief.
We begin our review of this assignment of error by noting the Ohio Supreme Court recently held that a "complete" record need not be perfect, even on direct appeal of a death penalty conviction.State v. Palmer (1997), 31 Ohio St.3d 543, syllabus. Further, according to the case of State v. Ishmail (1981), 67 Ohio St.2d 16, a trial court does not have to review the entire record where it is clear that the claims for postconviction relief are barred by the doctrine of res judicata.
In the case sub judice, the trial court found, and we agree, that the majority of appellant's claims were barred by resjudicata. Therefore, as to those claims, a review of the transcript was not necessary. As to the few claims that remained, appellant set forth evidence to support these claims in the six volumes of evidence he filed with his petition for postconviction relief. This evidence failed to set forth substantive grounds for relief and therefore, appellant was not entitled to a hearing on these issues.
Finally, the fact that the trial court adopted citations from the state's motion to dismiss and used it in the judgment entry dismissing appellant's petition for postconviction relief is not impermissible. In State v. Powell (1993), 90 Ohio App.3d 260,263, the trial court explained that in a petition for postconviction relief, "the trial court's adoption of the findings of fact and conclusions of law submitted by the state does not, by itself, deprive the petitioner of a meaningful review of his petition for postconviction relief and does not constitute error in the absence of demonstrated prejudice." Appellant has failed to demonstrate any prejudice.
Appellant's first assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.
By: Wise, J. Farmer, P. J., and Gwin, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Ashland County, Ohio, is affirmed.
[1] On May 20, 1998, the Ohio Supreme Court affirmed appellant's conviction and imposition of the death penalty. Statev. White (1998), 82 Ohio St.2d 16.