DECISION.
Petitioner-appellant Joseph Elliott has taken the instant appeal from the judgment of the common pleas court denying his second petition for postconviction relief. On appeal, he presents two assignments of error, in which he challenges the court's application of the doctrine of res judicata to deny his postconviction claims and its failure to make findings of fact and conclusions of law. Upon our determination that the court was without jurisdiction to entertain the petition, we affirm the judgment of the court below.
Elliott was convicted in January of 1996 on two counts of rape and two counts of aggravated burglary. We affirmed the judgment of conviction in December of that year, see State v. Elliott (Dec. 24, 1996), 1st Dist. No. C-960072, and the Supreme Court of Ohio denied Elliott leave to file a delayed appeal. See State v. Elliott (1999), 87 Ohio St.3d 1442,719 N.E.2d 5.
On November 6, 1996, before the release of our decision in his direct appeal, Elliott filed a motion by which he sought the release of evidence for DNA analysis. In his motion, he alleged the following:
 One of the most important aspects of the State's case was evidence concerning [three] blood stains on the nightgown of the victim. [Two] of these spots were tested by Cellmark labs and subjected to DNA analysis. The analysis excluded [Elliott as a source of the blood]. A third spot was only blood typed [by the Hamilton County Coroner's office]. [Elliott] could not be excluded [as a source of the blood] by that [blood-typing] analysis. DNA testing was never requested to be conducted [on the third spot].
 * * * During the trial the prosecution relied heavily on the inference to be drawn from the failure [of the blood-typing analysis conducted on the third spot] to exclude [Elliott as a source of the blood] * * *.
 Thus, Elliott sought the release for DNA testing of that portion of the victim's nightgown containing the third of the three bloodstains. He also filed on that date a petition for postconviction relief, in which he challenged, inter alia, his counsel's effectiveness in dealing with the bloodstain evidence at trial. On December 12, 1996, the common pleas court denied both the motion for DNA testing and the petition for postconviction relief.
In March of 1997, Elliott again moved for the release of evidence to facilitate DNA testing of the third bloodstain. The common pleas court granted the motion.
On January 12, 2001, three and one-half years after the court had ordered the evidence released, Elliott filed, pursuant to Crim.R. 33, an "Application for [an] Order Allowing [a] Motion for New Trial." Elliott asserted in his "[a]pplication," and offered evidentiary material to show, that he had been diligent in obtaining DNA testing "as soon as it [had been] economically feasible," and that DNA testing of the third bloodstain had excluded him as the source of the blood. He thus sought a hearing to establish that he had been unavoidably prevented from discovering the evidence upon which his new-trial motion depended and an order allowing him to file a motion for a new trial on the basis of this new evidence. On January 17, the common pleas court, without elaboration, placed of record its "Entry Overruling [the] Motion for New Trial."
Elliott did not appeal the court's "Entry Overruling [the] Motion for New Trial," but instead moved on February 8, 2001, for "[r]econsideration and [c]larification" of the entry. The court did not rule upon this motion.
Finally, on May 23, 2001, Elliott filed the "[m]otion" from which the instant appeal derives, by which he sought, pursuant to R.C. 2953.21, an "Evidentiary Hearing to Present * * * DNA Test Results." The common pleas court deemed the "motion" a petition for postconviction relief and denied the petition on two (seemingly contradictory) grounds: The court concluded that the claim presented a matter that was or could have been raised at trial or on direct appeal and was thus barred under the doctrine of res judicata, and that it constituted a claim of actual innocence based on newly discovered evidence and was thus not cognizable in a proceeding under R.C. 2953.21.
In his first assignment of error, Elliott asserts that the common pleas court erred in dismissing his postconviction petition without findings of fact and conclusions of law. This challenge is untenable.
R.C. 2953.21(G) requires the common pleas court to journalize its findings of fact and conclusions of law when it denies a petition for postconviction relief. But the court's disposition of a tardy or successive petition need not include findings of fact and conclusions of law if the court is without jurisdiction to address the petition. SeeState ex rel. Carroll v. Corrigan (1999), 84 Ohio St.3d 529,705 N.E.2d 1330; State v. Byrd (2001), 145 Ohio St.3d 318, 762 N.E.2d 1043.
Elliott's May 2001 "[m]otion" seeking, pursuant to R.C. 2953.21, an evidentiary hearing to present the DNA test results, constituted both a tardy and a successive petition for postconviction relief. R.C. 2953.23
closely circumscribes the jurisdiction of a common pleas court to entertain a tardy or successive petition: The petitioner must show either that he was unavoidably prevented from discovering the facts upon which his petition depends, or that his claim is predicated upon a new or retrospectively applicable federal or state right recognized by the United States Supreme Court since the expiration of the time prescribed in R.C. 2953.21(A)(2) or since the filing of his last petition; and he must show "by clear and convincing evidence that, but for constitutionalerror at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *." (Emphasis added.)
In support of his postconviction claim, Elliott asserted that the results from the DNA test conducted on the third bloodstain were obtained through the use of technology that had not been available at the time of his trial, and that this "newly discovered" evidence demonstrated his innocence of the offenses of which he was convicted. This claim of actual innocence based on newly discovered evidence did not demonstrate a constitutional violation in the proceedings resulting in his conviction. See State v. Powell (1993), 90 Ohio App.3d 260, 264, 629 N.E.2d 13. Therefore, we conclude that the common pleas court had no jurisdiction to entertain the claim as it was presented in Elliott's postconviction petition.
Having so concluded, we note, parenthetically, that the proper vehicle for asserting a claim of actual innocence based on newly discovered evidence is a Civ.R. 33 motion for a new trial. See Byrd,145 Ohio App.3d at 330-331, 762 N.E.2d 1043. Elliott attempted to pursue this course when, on January 12, 2001, he sought, by way of his "Application for [an] Order Allowing [a] Motion for New Trial," a hearing to establish that he had been unavoidably prevented from discovering the evidence upon which his new-trial motion depended and an order allowing him to file a motion for a new trial on the basis of that new evidence. But Elliott's failure to perfect a timely appeal from the common pleas court's January 17, 2001, "Entry Overruling [the] Motion for New Trial" precluded this court from reviewing the entry. This default, while injurious, is not fatal to this claim. Appellate review might still be secured by the filing of a motion, pursuant to App.R. 5(A), requesting leave to file a delayed appeal.
Nevertheless, as to the challenge advanced in the first assignment of error, our conclusion here, that the common pleas court had no jurisdiction to entertain upon his tardy and successive petition Elliott's claim of actual innocence based on newly discovered evidence, compels us to hold that the court below had no obligation to journalize findings of fact and conclusions of law. Accordingly, we overrule the first assignment of error.
In his second assignment of error, Elliott challenges the court's application of the doctrine of res judicata to deny his postconviction claims. As we determined supra, R.C. 2953.23 did not operate to confer upon the court below jurisdiction to entertain Elliott's claim of actual innocence based on newly discovered evidence advanced in his tardy and successive petition. The conclusion implicit in this determination, that Elliott's petition was subject to dismissal for lack of jurisdiction, renders moot the challenge advanced in his second assignment of error. We, therefore, do not reach the merits of that challenge.
Accordingly, we affirm the judgment of the court below.
Judgment affirmed.
Doan, P.J., Gorman and Sundermann, JJ.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.